UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **TIM DUFOUR AND THERESA DUFOUR**<br><br>                   **Plaintiffs,**<br><br>v.<br><br>**SYNGENTA CROP PROTECTION LLC, CHEVRON U.S.A., INC., THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY & AGRICULTURAL AND MECHANICAL COLLEGE, AND LOUISIANA STATE UNIVERSITY AGRICULTURAL CENTER a/k/a LOUISIANA STATE UNIVERSITY COOPERATIVE EXTENSION SERVICE**<br><br>                   **Defendants.** | **CIVIL ACTION**<br><br>**NO:**<br><br>**JUDGE:**<br><br>**MAGISTRATE JUDGE:**<br><br>**JURY TRIAL REQUESTED** |

## NOTICE OF REMOVAL

Defendant Syngenta Crop Protection LLC ("Syngenta"), pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, hereby removes the above-captioned action from the 18th Judicial District Court for the Parish of Iberville, Louisiana, case number 81844C, to the United States District Court for the Middle District of Louisiana. In support of removal, Syngenta provides this "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).

## NATURE OF REMOVED ACTION

1.     On September 7, 2022, Plaintiffs Tim Dufour and Theresa Dufour (collectively, "Plaintiffs") filed this action, *Tim Dufour et al. v. Syngenta Crop Protection, LLC et al.*, in the 18th Judicial District Court for the Parish of Iberville, Louisiana, case number 81844C, alleging claims based upon exposure to products containing paraquat and Plaintiff Tim Dufour's subsequent diagnosis with Parkinson's disease.

2.      Plaintiffs assert a total of thirteen causes of action against Defendants Syngenta, Chevron U.S.A. Inc. ("Chevron"), the Board of Supervisors of Louisiana State University & Agricultural and Mechanical College ("LSU Board"), and Louisiana State University Agricultural Center a/k/a Louisiana State University Cooperative Extension Service ("LSU Extension Service") (collectively "Defendants"), namely: (i) manufacturing and design defect against Syngenta; (ii) manufacturing and design defect against Chevron; (iii) failure to warn against Syngenta; (iv) failure to warn against Chevron; (v) negligence against Syngenta; (vi) negligence against Chevron; (vii) negligence against the LSU Board and LSU Extension Service; (viii) negligent misrepresentation against the LSU Board and the LSU Extension Service; (ix) violations of the Louisiana Unfair Trade Practices Act, La. R.S. § 51:1405 against Syngenta; (x) violations of the Louisiana Unfair Trade Practices Act, La. R.S. § 51:1405 against Chevron; (xi) fraud and misrepresentation against Syngenta; (xii) fraud and misrepresentation against Chevron; and (xiii) civil conspiracy, aiding-and-abetting fraud against Chevron.

3.      The thrust of Plaintiffs' allegations is that by manufacturing, distributing, or selling products containing paraquat, Defendants exposed Plaintiff Tim Dufour to an increased likelihood of developing Parkinson's disease, which he was later diagnosed with on September 8, 2021.

4.      This alleged conduct purportedly harmed Plaintiff Tim Dufour in the form of mental and physical suffering, emotional distress, loss of enjoyment of life, medical expenses, out of pocket lost earnings, personal injuries, and other noneconomic damages.

5.      Over 2,000 similar cases—alleging Parkinson's disease based on past exposure to paraquat—have been filed against Syngenta and Chevron in federal courts around the country, and the vast majority have been consolidated into a multidistrict litigation in the Southern District of Illinois. *See In re: Paraquat Prods. Liab. Litig.*, 21-md-03004 (S.D. Ill. 2021). Discovery is

proceeding apace in the MDL, and new cases are regularly being directly filed in the MDL or transferred to it. By filing this case in state court, Plaintiffs seek to avoid the MDL, which is designed to ensure the most efficient and orderly administration of a large number of cases presenting common issues of law and fact.

6. This case is subject to removal on the grounds of diversity jurisdiction, however, because complete diversity of citizenship would exist between Plaintiffs and Defendants but for the improper joinder of the LSU Board as a Defendant.

7. Plaintiffs have no hope of prevailing against the LSU Board for two reasons: (1) the LSU Board has discretionary immunity for its alleged involvement in researching, testing, marketing and promoting paraquat; and (2) Plaintiffs cannot show that the LSU Board owes a legally cognizable duty to Plaintiffs for its negligence and negligent misrepresentation claims based on that alleged involvement. As a result, the LSU Board has been improperly joined as a Defendant, and the Court should ignore its citizenship for purposes of evaluating jurisdiction.

8. Plaintiffs also name LSU Extension Service a Defendant, but that entity is incapable of being sued under Louisiana law. La. R.S. § 17:3215(8) provides that the LSU Extension Service is a constituent institution "under the supervision and management" of the LSU Board. And under La. R.S. § 17:3351(A)(1), it is the LSU Board, not the LSU Extension Service, that is a juridical entity capable of being sued. *See* La. R.S. § 17:3351(A)(1) (stating that "each postsecondary system management board as a body corporate" has the power to, among other things, "[s]ue and be sued, including the right to recover all debts owing to the board or any university or college under its management, and to retain legal counsel therefor"); *Davis v. La. State Univ. and A&M College*, Civ. No. 18-614-SDD-RLB, 2019 WL 179580, at *4 n.37 (M.D. La. Jan. 11, 2019) (dismissing Louisiana State University because "La. R.S. 17:3351(A)(1) provides that the Board

3

of Supervisors of LSU, as the post-secondary management board for LSU and its related entities, has the capacity to sue and be sued"). The LSU Extension Service, then, is an improper party because it is not a separate entity from the LSU Board. *See Boston. v. Tanner*, 29 F. Supp. 2d 743, 745 (W.D. La. 1998) ("For the purposes of analyzing the claims presented in this case, [the LSU Medical Center], as an entity in and of itself, cannot be distinguished from the Board of Supervisors because the Board of Supervisors is the operative arm of the medical center."). But even if the LSU Extension Service is a proper party (and it is not), Plaintiffs have improperly joined it here for the same reasons that they have improperly joined the LSU Board, and the Court should likewise disregard it for purposes of diversity jurisdiction.

9. This case is therefore subject to removal on the grounds of diversity jurisdiction because complete diversity of citizenship exists between Plaintiffs and the properly joined Defendants: Plaintiffs are citizens of Louisiana, Syngenta is a citizen of Delaware, and Chevron is a citizen of California and Pennsylvania.

10. In accordance with 28 U.S.C. § 1446(a) and the Local Rules of this Court, a copy of the Petition for Damages and Demand for Jury Trial is attached as **Exhibit A** ("Petition"). A copy of all other process, pleadings, and orders served on Syngenta and Chevron or otherwise on file with the state court are attached as **Exhibit B**.[1] A consent from Chevron consenting to the removal of this proceeding to this Court is attached as **Exhibit C**.

## TIMELINESS OF REMOVAL

11. Syngenta was served with the Petition on October 28, 2022, and Chevron was served on or about October 25, 2022. Syngenta and Chevron have not responded to the Petition

---

[1] Syngenta has attached the most recent state court record available to it as of filing. To the extent that record is not up-to-date, Syngenta will supplement accordingly as it becomes available.

4

in state court. Accordingly, this notice of removal is timely. *See, e.g.*, 28 U.S.C. § 1446(b) (notice of removal must be filed within 30 days of defendants being served); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354–56 (1999) (30-day removal period begins to run upon service of summons and complaint).

## PROPRIETY OF VENUE

12. Venue is proper in this Court under 28 U.S.C. § 1441(a) because the 18th Judicial District Court for the Parish of Iberville, Louisiana—where the state court action was pending before removal—is a state court within this federal district and division.[2]

## BASIS OF REMOVAL

### Diversity Jurisdiction

13. Removal is proper under 28 U.S.C. §§ 1332 and 1441 because complete diversity exists between the properly joined parties, and the amount in controversy exceeds $75,000.

14. Plaintiffs Tim Dufour and Theresa Dufour are citizens of the State of Louisiana. Petition ¶¶ 27, 30.

15. Syngenta is an LLC with its headquarters in Greensboro, North Carolina. But an LLC is a citizen of the States in which its members reside, not the State where its principal place of business is located, *see Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008), and, where applicable, a court must trace an LLC's citizenship through multiple layers of ownership, *see Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 397 & n.6 (5th Cir. 2009). Syngenta's

---

[2] On November 8, 2022, the LSU Board filed a declinatory exception of improper venue and asserted that venue is proper only in the Parish of East Baton Rouge under La. R.S. § 13:5104. *See* Exception of Improper Venue, *Dufour v. Syngenta Crop Protection, LLC et al.*, No. 81844C (La. 18th. Jud. Dist. Ct. Nov. 8, 2022). The LSU Board also reserved "all rights to file additional peremptory and/or declinatory exceptions including but not limited to exceptions of no cause of action, lack of duty and/or discretionary acts immunity." *Id.* ¶ 13.

sole member is Syngenta Seeds, LLC, which is headquartered in Downers Grove, Illinois. The sole member of Syngenta Seeds, LLC is Syngenta Corporation, which is incorporated and headquartered in Delaware. Syngenta is therefore a citizen only of the State of Delaware.

16. Chevron is headquartered in San Ramon, California, and incorporated in the Commonwealth of Pennsylvania, and it is thus a resident of those two States. *See Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010) (citing 28 U.S.C. § 1332(c)(1)).

17. Complete diversity therefore exists between the parties, but for the improper joinder of the LSU Board as a Defendant for alleged negligence and negligent misrepresentation based on its alleged involvement in researching, testing, marketing, and promoting of paraquat. *See* Petition ¶¶ 298–312.

18. The improper joinder doctrine "provides that a district court must disregard, for diversity jurisdiction purposes, the citizenship of an improperly joined defendant." *Waste Mgmt., Inc. v. AIG Specialty Ins. Co.*, 974 F.3d 528, 533 (5th Cir. 2020).[3] A removing party can demonstrate improper joinder by establishing either "actual fraud in the pleading of jurisdictional facts," or, as relevant here, establishing the "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003). "To determine whether the plaintiff can establish a cause of action against the non-diverse defendant, the district court conducts a Federal Rule of Civil Procedure 12(b)(6) analysis." *Waste Mgmt.*, 974 F.3d at 533. In the end, "[a] 'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder." *Smallwood,* 385 F.3d at 573 n.9 (quoting *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000)).

---

[3] Caselaw in the Fifth Circuit uses both "improper joinder" and "fraudulent joinder," but "[a]lthough there is no substantive difference between the two terms, 'improper joinder' is preferred." *Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 571 n.1 (5th Cir. 2004) (en banc).

6

19. Plaintiffs have improperly joined the LSU Board, and its citizenship should be excluded for purposes of determining diversity jurisdiction for two reasons.

20. *First*, the LSU Board has been improperly joined because it enjoys discretionary immunity from suits based on La. R.S. § 9:2798.1. That immunity prohibits imposing liability "on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." La. R.S. § 9:2798.1(B). And "public entit[ies]" include, among others, the "boards" of the State and its political subdivisions. *Id.* § 9:2798.1(A). As a board of the State, the LSU Board receives discretionary immunity if: (1) the action at issue involves an element of judgment or choice (*i.e.*, discretion), and (2) the "discretionary act was grounded in social, economic, or political policy." *Murray v. LeBlanc*, F. Supp. 3d, Civ. No. 21-592-JWD-RLB, 2022 WL 4361738, at *22 (M.D. La. Sept. 20, 2022) (quoting *Mitchell v. City of New Orleans*, 184 F. Supp. 3d 360, 377 (E.D. La. 2016)). This two-step test employed by Louisiana courts mirrors the two-step test for determining immunity under the Federal Tort Claims Act established in *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988). *See Murray*, 2022 WL 44361738, at *22.

21. Here, the LSU Board's alleged researching, testing, marketing, and promoting of paraquat satisfies both steps of the test for discretionary immunity. For the first step, Plaintiffs do not contend that any law or regulation specifically required the LSU Board to either engage in researching, testing, and promoting of paraquat or to refrain from engaging in such activities. *Cf. Berkovitz*, 486 U.S. 531 at 536 ("[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow."). Any decision made by the LSU Board regarding paraquat instead involved an element

7

of judgment or choice to engage in the activity. *See Mitchell*, 184 F. Supp. 3d at 377 ("If there is no statutory, regulatory, or procedural policy directive dictating the employees' course of conduct, then the court proceeds to the second step of the test."). And for the second, if the LSU Board did indeed research, test, market, and promote paraquat, then the decision to do so—and the decision of specifically how to do so—would have been grounded in social and economic policy because those decisions facilitated an investigation into the feasibility and safety of paraquat, which offered significant benefit to Louisiana's agricultural economy. *See, e.g.*, *Fossier v. Jefferson Par.*, 985 So. 2d 255, 258–59 (La. App. Ct. 2008) (finding discretionary immunity for "decisions regarding the drainage system" based on "social, economic, and political considerations" such as "feasibility and "safety considerations"). The LSU Board's decisions concerning paraquat are thus entitled to discretionary immunity under state law.

22. And *second*, in any event, the LSU Board has been improperly joined because Plaintiffs fail to allege a legal owed by the LSU Board in their negligence and negligent misrepresentation claims.

23. For one thing, Plaintiffs' negligence claim fails based on a lack of a specifically enforceable duty against the LSU Board. *See* Petition ¶¶ 298–312. Although Louisiana law imposes a general duty on defendants to exercise reasonable care, plaintiffs "are still required to assert a specific standard of care" from "statutory, jurisprudential, or arising from general principles of fault" to establish that the defendant owed an enforceable duty. *Butler v. Denka Perform. Elastomer, LLC*, 16 F.4th 427, 444–45 (5th Cir. 2021) (internal quotation marks omitted). Plaintiffs do not allege that the LSU Board manufactured, distributed, or otherwise sold paraquat— a traditional source of duty in product liability cases—and do not identify any specific duty that the LSU Board owed to Plaintiff Tim Dufour for merely conducting research or sharing

8

information about paraquat, either. *Cf.* Petition ¶¶ 298–312. Instead, Plaintiffs identify three general duties owed by the LSU Board: (1) "a duty to conform itself to the behavior of an objective third-party resource for farming communities delivering research-based recommendations to Louisiana farmers;" (2) "a duty to exercise ordinary care for the health and safety of the persons whom it was reasonably foreseeable could be exposed to Paraquat;" and (3) "a duty in all of their undertakings, including in the dissemination of information concerning Paraquat, to exercise reasonable care to ensure they did not create unreasonable risks of personal injury to others." *Id.* ¶¶ 302–04. These duties, however, appear to flow only from Louisiana's general duty of care. *See* La. Civ. Code art. 2315 ("Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."). As the Fifth Circuit has explained in an environmental tort case with similar facts, a plaintiff's "retreat to generalized grievances is unavailing" in establishing a legal duty, and that is precisely what has happened here: Plaintiffs have not pointed to any legal source of a specific duty owed to them by the LSU Board based on any alleged involvement with paraquat. *See Butler*, 16 F. 4th 427 at 444–45 (holding that a plaintiff failed to state a claim against the owner of a chemical plant for chloropene exposure because plaintiff could not point to a specific source of that duty).

24. Because the LSU Board owes no duty here, Plaintiffs have failed to state a negligence claim against it. *See Butler v. Denka Perform. Elastomer, LLC*, No. CV 18-6685, 2022 WL 102621, at *3 (E.D. La. Jan. 11, 2022) ("Without allegations suggesting the *source* of an enforceable duty, the plaintiff is unable to plead a plausible claim for negligence."), *aff'd sub nom. Butler v. E. I. DuPont de Nemours & Co.*, No. 22-30069, 2022 WL 5059893 (5th Cir. Oct. 4, 2022); *Landry v. Laney Directional Drilling Co.*, No. CIV.A. 09-615-JVPSCR, 2009 WL 3833831, at *4 (M.D. La. Nov. 16, 2009) ("[T]he court concludes that DEQ had no legal duty to

9

either test or remediate the material that was allegedly deposited on plaintiffs property by Laney. Plaintiffs therefore have failed to establish a claim against the non-diverse defendant, DEQ, and its joinder does not divest the court of diversity jurisdiction.").

25.     Plaintiffs' negligent misrepresentation claim also fails for the same reason: the LSU Board lacks a legal duty to Plaintiff Tim Dufour over his exposure to paraquat. *See* Petition ¶¶ 298–312.  To state a claim for negligent misrepresentation, "there must be a legal duty on the part of the defendant to supply correct information, there must be a breach of that duty, and the breach must have caused plaintiff damage." *Barrie v. V.P. Exterminators, Inc.*, 625 So. 2d 1007, 1015 (La. 1993).    As relevant here, "[t]he tort of negligent misrepresentation encompasses nondisclosures as well as affirmative misrepresentations." *McAuslin v. Grinnell Corp.*, No. CIV. A. 97-775, 1999 WL 370597, at *2 (E.D. La. June 8, 1999).  But when based on nondisclosure of information, a negligent misrepresentation claim requires "some sort of business relationship making it reasonable to imply an affirmative duty" to disclose. *McLachlan v. N.Y. Life Ins. Co.*, 488 F.3d 624, 630 (5th Cir. 2007); *see also Barrie*, 625 So. 2d at 1016 ("[The tort of negligent misrepresentation] has been broadly used to encompass situations ***of non-disclosure in fiduciary relationships***, to situations of direct disclosure to non-clients." (emphasis added)).  Plaintiffs' negligent misrepresentation claim centers on the alleged non-disclosure of paraquat's association with Parkinson's disease.  *E.g.*, Petition ¶ 310 ("Were it not for the direct assistance of LSU Defendants, Syngenta and Chevron would not have been as successful in keeping the link between Paraquat and Parkinson's Disease from Louisiana consumers and end-users of Paraquat, such as Plaintiff.").  Yet Plaintiffs fail to allege the requisite "business relationship" between the LSU Board and Plaintiff Tim Dufour that imposes a duty to disclose that alleged association, instead focusing their allegations on a relationship among the LSU Board, Syngenta, and Chevron. *See,*

10

*e.g.*, Petition ¶ 17 ("Syngenta designed, manufactured, tested, promoted, and distributed Paraquat in conjunction with Chevron, and with LSU Defendants."). No affirmative duty to disclose exists for the LSU Board, so Plaintiffs' negligent misrepresentation claim fails. *See McLachlan*, 488 F.3d at 630 (holding that defendant has no affirmative duty to disclose if not in privity with plaintiff and that to hold otherwise would "require everyone to warn everyone else of various physical dangers, regardless of the relationship"); *see also Audler v. CBC Innovis Inc.*, 519 F.3d 239, 250 (5th Cir. 2008) (ruling that flood determination company retained by a lender to perform a flood zone determination on a borrower's property did not owe a duty to the borrower to provide accurate information); *Gilbert v. B.D.O.W.S., Inc.*, 30,439 (La. App. 2 Cir. 4/8/98), 711 So.2d 765, 770 (concluding that an insurance company did not owe a duty to a swimmer to advise of swimming pool safety despite conducting inspection of the swimming pool).

26.    In sum, the LSU Board has been improperly joined because Plaintiffs have no chance at succeeding in either their negligence or negligent misrepresentation claims.

27.    There is also more than a plausible basis for concluding that the amount in controversy in this proceeding exceeds $75,000. A notice of removal must include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). The defendant is required to present evidence supporting that plausible allegation only if the allegation is challenged by the plaintiff or the court. *Id.*

28.    Louisiana law prohibits plaintiffs "from alleging or demanding a specific dollar amount of damages, limiting the prayer for relief to such damages as are reasonable in the premises." *Grant v. Chevron Phillips Chem. Co.*, 309 F.3d 864, 868 (5th Cir. 2002) (internal quotation marks omitted).

29.     Thus, when removing a case to federal court from Louisiana state court on diversity grounds, the removing defendant may prove that the amount in controversy exceeds $75,000 either by (a) demonstrating that it is "facially apparent" that the claims are likely above $75,000, or (b) setting forth the "facts in controversy" that support a finding of the requisite amount. *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000) (citing *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999)).

30.     It is facially apparent that, if Plaintiffs were to prove their allegations, the monetary damages sought by each Plaintiff would exceed $75,000.

31.     Allegations of long-term health issues are more likely to exceed the amount in controversy requirement. *See Stockstill v. Wal-Mart Stores, Inc.*, Civ. No. 10-95-FJP-SCR, 2010 WL 6494058, at *2 (M.D. La. Dec. 20, 2010) (acknowledging that a child's lifelong "injuries result in exposure to damages well in excess of the jurisdictional amount"), *report and recommendation adopted*, Civ. No. 10-95-FJP-SCR, 2011 WL 1397041 (Apr. 13, 2011).

32.     The amount in controversy is met here because Plaintiff Tim Dufour seeks substantial monetary damages for physical pain, mental anguish, diminished quality and enjoyment of life, and medical expenses as a result of diagnosis with a serious long-term illness—Parkinson's disease—and Plaintiff Theresa Dufour seeks substantial monetary damages for loss of consortium. Petition 52, ¶¶ 245–49, 261–65, 281, 289, 297, 312, 325, 336, 342, 348, 360. Indeed, the cost of Plaintiff Tim Dufour's medical treatment alone likely satisfies the $75,000 requirement. *See* Matthew Gavidia, "Study Details Economic Burden of Parkinson's Disease in the United States," *available at* https://www.ajmc.com/view/study-details-economic-burden-of-parkinson-disease-in-the-united-states.

**OTHER REMOVAL ITEMS**

33. Under 28 U.S.C. § 1446(b)(2)(A), all Defendants that have been properly joined must join or consent to removal.

34. Syngenta consents to removal, as indicated by counsel's signatures below, and Chevron consents to removal as indicated by **Exhibit C** attached hereto.

35. Because the LSU Board has been improperly joined, Syngenta does not require the LSU Board's consent for removal. *Rico v. Flores*, 481 F.3d 234, 239 (5th Cir. 2007) ("[A] removing party need not obtain the consent of a co-defendant that the removing party contends is improperly joined.").

36. By filing this Notice of Removal, Syngenta expressly reserves, and does not waive, any and all defenses that may be available, including those related to personal jurisdiction and service of process. If any question arises as to the propriety of removal to this Court, Syngenta requests the opportunity to submit a brief in support of its position that this case has been properly removed and to present oral argument.

37. Syngenta hereby reserves the right to amend or supplement this Notice of Removal.

38. Pursuant to 28 U.S.C. § 1446(d), Syngenta is contemporaneously filing a Notice of Removal with the clerk of the state court where the lawsuit has been pending and will serve notice of the filing of this Notice of Removal on Plaintiffs, which notice is attached hereto as **Exhibit D**.

**WHEREFORE**, Syngenta removes this action, now pending in the 18th Judicial District Court for the Parish of Iberville, Louisiana, case number 81844C, to this Court.

Respectfully Submitted,

**ADAMS AND REESE LLP**

*/s/ Diana Cole Surprenant*
Charles A. Cerise, Jr. (#1755)
Diana Cole Surprenant (#33399)
Alexandra Roselli Lamb (#37847)
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
***Attorneys for Defendant, Syngenta Crop Protection, LLC***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 23, 2022, a copy of the above and foregoing was provided to all counsel of record via facsimile, hand delivery, electronic mail, and/or U.S. mail, postage prepaid and properly addressed.

*/s/ Diana Cole Surprenant*